UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|                              |   |                                |
|------------------------------|---|--------------------------------|
| BETH KOPS McGINLEY,          : |   |                                |
| Plaintiff,                   : |   | Civil Action No. 12-5471 (JAP) |
| v.                           : |   |                                |
|                              : |   | **OPINION**                    |
| UNITED STATES OF AMERICA     : |   |                                |
| Defendant.                   : |   |                                |

PISANO, District Judge.

This is an action seeking the recovery of income taxes, penalties and interest collected from plaintiff Beth Kops McGinley ("Plaintiff") for the 2000 tax year. Plaintiff seeks the return of $102,969.68 plus interest. Presently before the Court is a motion by defendant United States of America (the "government") to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons below, the government's motion is granted.

I. BACKGROUND

On August 6, 2001, Plaintiff and her then husband, Kevin Kops ("Kops"), filed a joint income tax return for the 2000 tax year with the Internal Revenue Service ("IRS"). Compl. at ¶ 6. The amount due, exclusive of penalty and interest, was $76,744. *Id.* at ¶ 7. Subsequently, Plaintiff and Kops divorced, and on July 2, 2004, the Superior Court of New Jersey entered a judgment against Kops requiring him to pay Plaintiff child support. *Id.* at ¶ 8. This judgment was filed and attached as a lien against Kops's half-interest in the former marital home (the

"Residence"), where Plaintiff resided with the couple's children. *Id.* at ¶ 9. Shortly thereafter, on August 25, 2004, the IRS filed a tax lien against Plaintiff and Kops in the amount of $91,404.56 which attached to the Residence. *Id.*

In the divorce, Plaintiff was awarded the previously jointly-owned Residence and title to it was deeded solely to Plaintiff in 2005. *Id.* at ¶ 10. As such, the property was no longer held jointly by Kops.

In March of 2006, the IRS determined that Plaintiff was an "innocent" spouse and granted relief to Plaintiff under Section 6015 of the Internal Revenue Code for the entire tax liability for the 2000 tax year. *Id.* at ¶ 11. Thus, the IRS effectively determined that Plaintiff had no responsibility for that year's tax liability. Accordingly, in July of that same year, the IRS released the previously filed tax lien as to Plaintiff, but did not release its lien with respect to Kops. *Id.*.

Plaintiff's counsel worked on her behalf seeking relief from the tax lien as to Kops against the Residence, as the Residence was now solely owned by Plaintiff. The IRS advised counsel to file a request for a certificate of nonattachment, which he did on October 29, 2008. Eagan Decl. ¶ 11. The IRS denied the request. *Id.* The IRS also advised counsel to file a request for a certificate of discharge, which was done on June 22, 2009. *Id.* at ¶ 12. This request was also denied. *Id.* According to counsel, each of these requests were prepared after he engaged in "long conversations with multiple IRS agents" with whom counsel dealt with on the matter as to proper IRS procedure. *Id.* at ¶ 13. According to his declaration, Plaintiff's counsel was receiving "conflicting advice" from the IRS as to how to proceed from a procedural perspective. *Id.* at ¶ 14. Counsel was engaged in "protracted negotiations" with the IRS in order to find suitable relief for Plaintiff, but such negotiations allegedly lagged

allegedly "due to the IRS's confusion and conflicting advice on how to move forward." *Id.* at ¶¶ 14-15.

In June of 2010, Plaintiff entered into a contract to sell the residence. *Id.* at ¶ 18. With respect to the sale, the IRS took the position that Kops still had an interest in the property because "the August 24, 2004 tax lien was filed before the property was transferred solely to plaintiff in June 2005." Compl. ¶ 12. Plaintiff's counsel contacted the IRS in an attempt to come to a settlement on the amount owed so that amount could be escrowed at the closing. Eagan Decl. ¶ 19. Initially, the IRS agreed to permit the escrow of an amount of just over $162,000 so that Plaintiff could sell the residence and continue to dispute the amount owed. *Id.* at 20. The parties continued to negotiate and eventually the IRS agreed that it would release the lien in exchange for a payment of about $103,000. *Id.* at ¶ 24. The IRS changed its position with respect to escrowing the funds, and advised Plaintiff on the eve of closing that it would require payment, not escrow, of that amount in exchange for a discharge of the lien. *Id.* at ¶ 23.

In August 2010, Plaintiff sold the Residence. Consequently, on or about September 2, 2010, Plaintiff paid the IRS $102,929.68, an amount which Plaintiff states she believed to be full payment of all tax, penalty and interest owed with respect to the 2000 tax year. Compl. at ¶¶ 12-13. On November 10, 2011, the IRS issued a certificate of discharge with respect to the entire tax lien. Eagan Decl. ¶ 24.

On January 31, 2011, Plaintiff appealed the certificate of discharge with the IRS Appeals Office. *Id.* at ¶ 25. In early February 2011, Plaintiff was advised by an appeals officer that he could not provide any relief because the tax was paid as part of the sale of real estate, but this officer suggested that Plaintiff file a claim for refund pursuant to Form 843.

*Id.* at ¶¶ 26-27. Consequently, on August 2, 2011, Plaintiff filed a claim for a refund with the IRS, asserting, among other things, that no monies should have been collected by the IRS with respect to the lien because the July 2, 2004 child support judgment had priority over the August 25, 2004 federal tax lien. The amount of child support owing by 2010 had become $553,000. Compl. at ¶ 16.

While her claim for refund was pending, Plaintiff, believing that her claim was covered by the two-year statute of limitations under Section 6511(b) of the Tax Code, filed the instant lawsuit on August 30, 2012 as a protective measure. Eagan Decl. ¶ 28. Plaintiff's counsel continued his discussions with the IRS and, on or about October 4, 2012, reached an agreement with a member of the IRS Taxpayer Advocate's Office, who agreed that the full amount of the payment would be refunded because the tax lien did not have priority over the child support judgment lien. *Id.* at ¶ 29. The IRS advised Plaintiff's counsel that New Jersey's probation department would have to send a letter to the IRS requesting the payment of the funds to the department directly. Accordingly, on November 26, 2012, Superior Court of New Jersey, Family Part, Somerset County entered an order requiring the IRS to pay the funds into court pending a formal application by Plaintiff for release of those funds. *Id.* at ¶ 30. The IRS has refused to pay the funds. This suit followed.

II. ANALYSIS

The government alleges that the Court lacks subject matter jurisdiction over this case because the United States has not waived sovereign immunity. As explained below, the government contends that the Court lacks jurisdiction if Plaintiff's claim is considered a refund claim under § 1346(a)(1) because plaintiff is not the "taxpayer" and the prerequisite of the tax being fully paid has not been met. The government further contends that Plaintiff's

4

claim is out of time if the claim is considered one under § 7426(a)(4) (providing certain remedies for third parties) because that statute required her to file her action within 120 days of the issuance of the certificate of discharge by the IRS.

Plaintiff responds that her claim is permitted under § 1346(a)(1) pursuant to the doctrine set forth in *United States v. Williams*, 514 U.S. 527, 532-533, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). Plaintiff also argues that the government should be equitably estopped from raising its various procedural defenses to Plaintiff's complaint and that the government has waived its lack of standing argument.

A. Legal Standard

*1. Rule 12(b)(1)*

Under Federal Rule of Civil Procedure 12(b)(1), a case may be dismissed for "lack of subject-matter jurisdiction." When subject matter jurisdiction is challenged under this rule the plaintiff bears the burden of persuasion. *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). In evaluating a Rule 12(b)(1) motion to dismiss, the Court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact. *Id.* "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Defendant in this case makes a factual attack on subject matter jurisdiction. Accordingly, the Court has considered the evidence submitted by both parties in deciding this motion to dismiss.

5

*2. Sovereign Immunity*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), *see also Loefler v. Frank*, 486 U.S. 549, 554, 108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988); *Federal Housing Administration v. Burr*, 309 U.S. 242, 244, 60 S.Ct. 488, 490, *84* L.Ed. 724 (1940). "'[W]aivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed,' and any such waiver must be construed strictly in favor of the sovereign." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)).

B.  Plaintiff's Motion

The government has filed the instant motion claiming that the Court lacks jurisdiction over this suit because there has been no waiver of sovereign immunity. The government's argument is essentially two-fold. First, the government contends that if Plaintiff purports to bring a refund action under 28 U.S.C. §1346(A)(1)[1] (permitting a civil action against the United States for the recovery of any tax alleged to have been erroneously or illegally assessed or collected) there is no jurisdiction because Plaintiff is not a proper party under 26 U.S.C. § 7422 (addressing requirements for refund actions). The government asserts that Plaintiff is not the "taxpayer" (*i.e.*, the person who had the tax obligation) and, further, even if

---

[1] This section of the code waives the government's sovereign immunity by authorizing:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. §1346(A)(1).

she was the taxpayer, the tax liability must be paid in full prior to filing suit, and it allegedly has not been.

Second, the government argues that to the extent Plaintiff's action is considered one pursuant to 26 U.S.C. § 7426 (providing certain remedies for third parties), Plaintiff's claim is out of time because that statute required her to file her action in district court within 120 days from the time she made the payment to the IRS.

Turning first to the government's "not-the-taxpayer" argument, the Court notes that the government provides little in the way of an explanation of its argument. Rather, it simply states that Plaintiff is "not the taxpayer" and cites to § 7422 alone. Presumably, the government asks the Court to infer an argument that goes as follows:

> Under 26 U.S.C. § 7422, a party may not bring a refund action without first exhausting administrative remedies; under 26 U.S.C. § 6511, only a "taxpayer" may exhaust; under 26 U.S.C. § 7701(a)(14), [Plaintiff] is not a taxpayer.[2]

*United States v. Williams*, 514 U.S. 527, 532-533, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). This argument was rejected by the Supreme Court under facts similar to the present matter in *Williams*; although, as discussed *infra*, it has been generally held that the ultimate holding in *Williams* has been superseded by statute.

In response to the government's argument, Plaintiff contends that 28 U.S.C. §1346(A)(1) authorizes her suit under the doctrine of the *Williams* case. Similar to the instant case, the plaintiff in *Williams* paid her ex-husband's federal tax under protest in order to remove a tax lien on the house formerly owned jointly by both. Rejecting the government's argument that no waiver of sovereign immunity existed, the *Williams* Court decided that § 1346(a)(1) authorized a tax-refund claim by a third party whose property was subjected to an

---

[2] Under 26 U.S.C. § 7701(a)(14) "[t]he term 'taxpayer' means any person subject to any internal revenue tax."

allegedly wrongful tax lien. The Court's holding was based upon the fact that no other remedy would have existed for the plaintiff in that case. *See EC Term of Years Trust v. United States*, 550 U.S. 429, 127 S.Ct. 1763, 1765, 167 L.Ed.2d 729 (2007) (clarifying that *Williams's* holding rested "on the specific understanding that no other remedy ... was open to the plaintiff in that case.")

The government contends, however, that *Williams* is no longer applicable because Congress has now created a remedy for parties in Plaintiff's shoes. Unlike the plaintiff in *Williams* who had no other avenue for relief, property owners like Plaintiff could challenge the IRS's lien under 26 U.S.C. § 7426(a)(4). Plaintiff herself acknowledges that, in response to *Williams*, Congress enacted the Internal Revenue Service Restructuring & Reform Act, which amended 26 U.S.C. § 7426 by adding subsection (a)(4) and also amended 26 U.S.C. § 6325 by adding subsection (b)(4). Under § 6325(b)(4),[3] the owner of a property subject to the

---

[3] 26 U.S.C. 6325(b) provides in the relevant part as follows:

(4) Right of substitution of value.--

(A) In general.--At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner--

(i) deposits with the Secretary an amount of money equal to the value of the interest of the United States (as determined by the Secretary) in the property; or

(ii) furnishes a bond acceptable to the Secretary in a like amount.

(B) Refund of deposit with interest and release of bond.--The Secretary shall refund the amount so deposited (and shall pay interest at the overpayment rate under section 6621), and shall release such bond, to the extent that the Secretary determines that--

(i) the unsatisfied liability giving rise to the lien can be satisfied from a source other than such property; or

(ii) the value of the interest of the United States in the property is less than the Secretary's prior determination of such value.

(C) Use of deposit, etc., if action to contest lien not filed.--If no action is filed under section 7426(a)(4) within the period prescribed therefor, the Secretary shall, within 60 days after the expiration of such period--

federal tax lien of a third party can obtain a certificate of discharge from the IRS by providing a cash deposit or bond sufficient to protect the government's lien interest in the property, *i.e.*, a substitution of value. Section 7426(a)(4)[4] provides that if a certificate of discharge is issued under § 6325(b)(4) and a property owner is dissatisfied the IRS's determination of the lien value, the property owner may bring suit within 120 days after issuance of the discharge for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the IRS. This section expressly provides that "no other action may be brought by such person for such a determination." 26 U.S.C. § 7426(a)(4). In the time since the enactment of the aforementioned amendments, the majority of courts addressing the question have found that the amendments have superseded the holding in *Williams*, and taxpayers in Plaintiff's situation must utilize the procedures set forth in 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4) before filing a claim in district court. *See*, *e.g.*, *Munaco v. U.S.*, 522 F.3d 651 (6th Cir. 2008) (citing cases). The Court is in agreement with the weight of the authority so holding.

---

(i) apply the amount deposited, or collect on such bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien; and

(ii) refund (with interest as described in subparagraph (B)) any portion of the amount deposited which is not used to satisfy such liability.

(D) Exception.--Subparagraph (A) shall not apply if the owner of the property is the person whose unsatisfied liability gave rise to the lien.

[4] 26 U.S.C. § 7426(a) provides in the relevant part as follows:

(4) Substitution of value.--If a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. No other action may be brought by such person for such a determination.

In finding that the holding in *Williams* does not apply here to save Plaintiff's claim, the Court rejects Plaintiff's argument that her situation is identical to that of the *Williams* plaintiff in that she is without a remedy. It appears that Plaintiff could have but failed to seek the relief under §§ 6325(b)(4) and 7426(a)(4), as she has presented no evidence that she sought to challenge the IRS's determination under that statutory procedure. While Plaintiff argues that she her ability to enter into a "substitution of value" arrangement required by the above statutes was foreclosed by the IRS's eleventh hour rejection of an escrow agreement, there is no claim by Plaintiff that she sought a discharge under § 6325(b)(4). Indeed, documentary evidence predating the IRS's last minute payment demand shows that Plaintiff, through counsel, sought a certificate of discharge expressly under § 6325(b)(2)(A), [5] *not* § 6325(b)(4). Eagan Decl. Ex. B (letter requesting certificate of discharge). Both conditional commitments to discharge from the IRS reference Plaintiff's "application … under the provisions of section 6325(b)(2)(A)." Consistent with Plaintiff's initial request, the certificate of discharge, on its face, states that it is issued pursuant to § 6325(b)(2)(A). *See* Eagan Decl., Ex. E (Certificate of Discharge dated 9/23/10). In addition to explicitly referencing § 6325(b)(2)(A), the certificate of discharge was issued on Form 669-B, which, according to the Internal Revenue Manual, is used when the discharge is pursuant to § 6325(b)(2)(A). *See* Internal Revenue Manual Part 5, Chapter 12, § 3.12(3)(B)

---

[5] Section 6325(b)(2)(A) provides that "the Secretary may issue a certificate of discharge of any part of the property subject to the lien if--(A) there is paid over to the Secretary in partial satisfaction of the liability secured by the lien an amount determined by the Secretary, which shall not be less than the value, as determined by the Secretary, of the interest of the United States in the part to be so discharged…"

(http://www.irs.gov/irm/part5/irm_05-012-003.html) (last visited Sept. 20, 2013). Nothing in the record before the Court indicates that Plaintiff sought a discharge under § 6325(b)(4).[6]

"If a third party obtains the discharge of a tax lien pursuant to § 6325(b)(2)(A), the tax code provides for no judicial review of the collection by the IRS in exchange for the certificate of discharge." *Four Rivers Investments, Inc. v. U.S.*, 77 Fed. Cl. 592, 603-04 (Fed. Cl. 2007); *see also Crytser v. U.S.*, 2006 WL 3203585 (E.D. Wash. November 02, 2006) ("Persons who request a certificate of discharge under section 6325(b)(2)(A) may not seek judicial review of the IRS's valuation determination through a refund action under 28 U.S.C. § 1346(a)(1)."); Rev. Rul.2005-50, 2005-30 I.R.B. 124, 2005 WL 1710987 (IRS RRU) (third party who seeks discharge of a federal tax lien under § 6325(b)(2) cannot maintain a refund action under 28 U.S.C. § 1346(a) or an action for substitution of value under section 7426(a)(4).). Section 7426(a)(4) by its terms waives sovereign immunity and permits a suit by a third party such as Plaintiff only in situations where the certificate issued under § 6325(b)(4). Thus, if, as the documents submitted appear to show, Plaintiff pursued and was issued a certificate of discharge under § 6325(b)(2)(A), there has been no waiver of sovereign immunity and the Court has no jurisdiction to hear this matter.

However, despite the express reference to § 6325(b)(2)(A) in the operative documents, including the certificate of discharge itself, the government has provided the Court with a declaration from a Technical Services Advisor with the IRS, who states that the certificate of discharge with respect to the subject property was issued pursuant to § 6325(b)(4).

---

[6] As discussed *infra*, under Treasury regulation 26 C.F.R. 301.6325-1(b)(5), absent a written waiver, Plaintiff's request would have been treated as one under § 6325(b)(4) and any funds paid would have been treated as a deposit. However, the issue of the existence of a waiver or the lack thereof was not raised by the parties.

11

Supplemental Decl. of Joseph Martone ("Supp. Martone Decl.") ¶ 6. Specifically, Mr. Martone states that

> In 2010, the IRS issued a certificate of discharge, pursuant to 26 U.S.C. § 6325(b)(4), releasing the property from the federal lien against Kevin Kops. In return, Beth McGinley agreed to pay $102,929.68 to the IRS.

*Id.* Nevertheless, even if the certificate issued pursuant to §6325(b)(4),[7] Plaintiff's claim would not be timely. Under § 7426(a)(4), Plaintiff would have had 120 days from the date of the certificate of discharge to initiate this civil action, and she did not do so. This action was filed nearly two years after the certificate issued.

Plaintiff further argues that the government should be equitably estopped "from raising its various procedural defenses" to Plaintiff's claim. Her argument is quite nonspecific, and does not indicate exactly the manner in which Plaintiff is asserting that the government should be estopped. While accurately stating the elements for equitable estoppel, Plaintiff fails to address each element individually. Rather, Plaintiff makes a broad argument that the government should be estopped from "advancing its current procedural-based arguments for dismissal" because "the IRS provided conflicting advice" and "could not

---

[7] Despite the contrary information on the face of the September 23, 2010 certificate of discharge, if the IRS issued (or intended to issue) the certificate pursuant to § 6325(b)(4) when it appears that Plaintiff applied for a certificate under § 6325(b)(2)(A), it is possible that the IRS was complying (or attempting to comply) with 26 C.F.R. 301.6325-1(b)(5) which provides as follows:

> Any person desiring a certificate of discharge under this paragraph (b) shall submit an application in writing to the appropriate official. The application shall contain the information required by the appropriate IRS Publication. For purposes of this paragraph (b), any application for certificate of discharge made by **a property owner who is not the taxpayer**, and any amount submitted pursuant to the application, will be treated as an application for discharge and a deposit under section 6325(b)(4) **unless** the owner of the property submits a statement, in writing, that the application is being submitted under another paragraph of section 6325 and not under section 6325(b)(4), and the owner in writing waives the rights afforded under paragraph (b)(4), including the right to seek judicial review.

26 C.F.R. 301.6325-1(b)(5) (emphasis supplied). No argument as Plaintiff's entitlement to relief based upon the procedures set forth in this regulation and/or based upon either the presence or absence of a waiver relief has been raised by either party, and no information is in the record before the Court with respect to a waiver.

decide on a mechanism for removing the Tax Lien" and it was the IRS's "bureaucratic missteps and bumbling approach" that caused Plaintiff's "procedural issues in this case."

While the Supreme Court has never adopted a general rule that estoppel may never run against the government in any circumstances, it has warned that courts should be cautious when evaluating estoppel claims against the government. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed."); *see also Bachner v. Comm'r*, 81 F.3d 1274, 1282 (3d Cir. 1996) ("Estoppel claims have traditionally been put to especial rigor in the taxation context."). Between private parties, a party asserting estoppel against another "must establish that [1] they relied to their detriment on [2] their adversary's misrepresentation and that [3] such reliance was reasonable because they neither knew nor should have known the adversary's conduct was misleading." *Fredericks v. Comm'r*, 126 F.3d 433, 438 (3d Cir. 1997). To assert estoppel against the government, the Third Circuit imposes an additional burden in addition to these traditional elements; the court requires claimants to establish some "affirmative misconduct on the part of the government officials." *Id.* But "[n]ot every form of official misinformation will be considered sufficient to estop the government," and erroneous oral advice, mere negligence, mistakes of law, and simple omissions by government officials do not qualify as affirmative misconduct. *See*, *e.g.*, *id.*; *Bachner*, 81 F.3d at 1282.

There are two main issues in this case: (1) Plaintiff's lack of standing to bring a refund claim under § 7422/§ 1346(a)(1); and (2) the expiration of the limitations period for a claim under § 7426(a)(4). As discussed below, Plaintiff here has not carried her burden to show that

13

the necessary elements for estoppel against the government with regard to either of these issues have been met (assuming, without deciding, that estoppel would be a remedy available here). At the threshold, Plaintiff must show detrimental reliance. However, her broad argument here fails to specify how any alleged misrepresentation on the part of the IRS misled her to believe that she would have standing to bring a refund claim under § 7422/§ 1346(a)(1). Plaintiff also fails to specify how any alleged misrepresentation prevented her from utilizing the procedures of §§ 6325(b)(4) and 7426(a)(4) and then bringing an action under § 7426(a)(4) prior to the expiration of the 120-day limitations period.

Further, the Court finds that the reasonableness requirement of the reliance element has not been met. Reliance can only be reasonable when the party asserting estoppel did not know and should not have known that it was being misled. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Here, Plaintiff was represented by counsel throughout her dealings with the IRS on this issue. As represented in the record, counsel appeared to be relying exclusively on the advice of the IRS on how to proceed. There is nothing in the record that supports an inference that but for any alleged misinformation given by the IRS, Plaintiff's counsel would have proceeded under a procedure set forth in the tax code that would have preserved Plaintiff's right to judicial review (*e.g.*, §§ 6325(b)(4) and 7426(a)(4)). It is a longstanding general rule that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. at 63.

Also undermining Plaintiff's argument is the fact that much, if not all, of the alleged misinformation from the IRS was oral. Plaintiff does not point to any reliance on any written

14

communications or IRS documents, publications or forms. Rather, counsel states in his declaration that after "long conversations with multiple IRS agents" he filed a request for a certificate of nonattachment and then a request for a certificate of discharge under § 6325(b)(2)(A), both of which were denied by the IRS. Courts have found reliance on oral advice to be problematic for litigants seeking to estop the government. As the Third Circuit has noted,

> The Supreme Court stated in *Heckler* that "[t]he necessity for ensuring that governmental agents stay within the lawful scope of their authority, and that those who seek public funds act with scrupulous exactitude, argues strongly for the conclusion that an estoppel cannot be erected on the basis of the oral advice." 467 U.S. at 65, 104 S.Ct. 2218. Several courts of appeals have cited *Heckler* in support of their holdings that oral representations can never estop the government, regardless of the circumstances. *See*, *e.g.*, *United States v. Vanhorn*, 20 F.3d 104, 112 n. 19 (4th Cir.1994); *FDIC v. Royal Park No. 14*, 2 F.3d 637, 641 (5th Cir.1993); *United States v. Boccanfuso*, 882 F.2d 666, 670 (2d Cir.1989); *Falcone v. Pierce*, 864 F.2d 226, 230 (1st Cir.1988). Similarly in *Fredericks*, we stated that "Fredericks' reliance would have been unreasonable had it been based solely on the initial oral misrepresentation." 126 F.3d at 442.

*Crisi v. U.S.*, 407 Fed. Appx. 573, 577-78 (3d Cir. 2010) (finding reliance on oral representations by the IRS officers to be unreasonable, particularly where oral representations were inconsistent with written notice).

Finally, Plaintiff argues that the government "waived its lack of standing argument" because at no point during the negotiation process did the IRS contend that she lacked standing to bring a refund suit, nor did the IRS ever dispute her entitlement to a refund. However, the issue in the present case is one of subject matter jurisdiction. It is well-settled that a party cannot waive the defense of subject matter jurisdiction. The Supreme Court has noted that

> Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (internal citations omitted). Thus, the Court cannot find that the government has waived its lack of subject matter jurisdiction argument.

III.  CONCLUSION

While the Court is not unsympathetic to Plaintiff's situation, the Court may only act within the jurisdiction it has been granted. Furthermore, in deciding this (or any) motion, the Court is constrained by the arguments and evidence presented, as well as, of course, the applicable law. Plaintiff simply has not carried her burden here. For the reasons above, the Court finds that it lacks subject matter jurisdiction over this case. Accordingly, the government's motion to dismiss is granted. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
Joel A. Pisano, U.S.D.J.

Dated:  September 27, 2013